UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ROTHSCHILD LOCATION TECHNOLOGIES LLC, | § § § | CASE NO. 6:15-cv-682-RWS-JDL |
| *Plaintiff*, | § § | |
| | § | CONSOLIDATED LEAD CASE |
| v. | § § | |
| GEOTAB USA, INC., *et al.*, | § § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants*. | § § | |

# REPORT AND RECOMMENDATION OF
# UNITED STATES MAGISTRATE JUDGE

Before the Court is the Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 32) filed by Defendants Geotab USA, Inc. ("Geotab"), GoFleet Corporation ("GoFleet"), Iler Group, Inc. ("Iler"), Life360 Inc. ("Life360"), and Limo Anywhere, LLC ("Limo Anywhere"), and subsequently joined by Skypatrol, LLC ("Skypatrol") (Doc. No. 64).[1] Geotab originally filed its 12(b)(6) motion to dismiss (Doc. No. 16) prior to the Court's consolidation of the cases. The Court's consolidation order denied all pending motions, with the exception of venue, as moot for refiling in the lead case. Doc. No. 25. Pursuant to this order, Geotab refiled its motion to dismiss in the consolidated case (Doc. No. 32) and attached all briefing so far submitted by Geotab and Plaintiff Rothschild Location Technologies, LLC ("Rothschild") as exhibits: Geotab's motion to dismiss (Doc. No. 32 Ex. A) ("Mot."), Rothschild's response (Doc. No. 32 Ex. B) ("Resp."), and Geotab's reply (Doc. No. 32 Ex. C) ("Reply"). In joining Geotab's motion, Skypatrol also attached the same motion papers as exhibits—Geotab's motion to dismiss (Doc. No. 64 Ex. A), Rothschild's response (Doc. No. 64

---

[1] The Court will refer to Geotab, GoFleet, Iler, Life360, Limo Anywhere, and Skypatrol collectively as "Defendants."

1

Ex. B), and Geotab's reply (Doc. No. 64 Ex. C)—without any further additions to the motion. Rothschild subsequently filed its sur-reply (Doc. No. 66) ("Sur-Reply") on December 14, 2015. Upon consideration, the Court **RECOMMENDS** the present Motions (Doc. Nos. 32 and 64) be **GRANTED**.[2]

## BACKGROUND

Between July 14, 2015, and October 15, 2015, Rothschild Location Technologies LLC ("Rothschild") filed complaints against multiple defendants alleging infringement of U.S. Patent No. 8,606,503 ("the '503 patent"). *See, e.g.*, Doc. No. 1. On November 19, the Court consolidated these actions into the lead case, No. 6:15-cv-683, for pretrial issues other than venue. Doc. No. 25.

The '503 patent, entitled "Device, System and Method for Remotely Entering, Storing, and Sharing Addresses for a Positional Information Device," generally relates to "remotely entering, storing, and sharing addresses for a positional information device, e.g., a global positioning system (GPS) device." '503 patent 1:15–20. The '503 patent contains two independent claims, method claim 1 and system claim 8, which recite as follows:

> 1. A method for entering location information into a positional information device, the method comprising:
>    receiving, by a server, a request from a first positional information device for at least one address stored in at least one second positional information device, the request including a first identifier of the first positional information device;
>    determining, by the server, a second identifier for identifying the at least one second positional information device based on the received first identifier;

---

[2] On December 17, 2015, Rothschild, Geotab, Iler, and GoFleet consented to the undersigned Honorable Judge John D. Love conducting all proceedings in this action (including a jury or nonjury trial) and ordering entry of a final judgment. *See* Doc. No. 86. Life360, Limo Anywhere, and Skypatrol joined the present motion but have not consented. Furthermore, all deadlines between Rothschild and Limo Anywhere are stayed until January 13, 2016. *See* Doc. No. 77.

> retrieving, by the server, the requested at least one address stored in the identified at least one second positional information device; and
>
> transmitting, by the server, the retrieved at least one address to the first positional information device.

8. A system for entering location information into a positional information device, the system comprising:

> a server configured to receive a request for at least one location, determine an address of the at least one requested location and to transmit the determined coordinates to a first positional information device;
>
> the first positional information device including
>
>> a locational information module for determining location information of the first positional information device;
>>
>> a communication module for receiving the address of the at least one location from the server;
>>
>> a processing module configured to receive the address from the communication module and determine route guidance based on the location of the first positional information device and the received address; and
>>
>> a display module for displaying the route guidance; and
>
> a communications network for coupling the first positional information device to the server,
>
> wherein the server receives a request from a first positional information device for the at least one address stored in at least one second positional information device, the request including a first identifier of the first positional information device, determines a second identifier for identifying at least one second positional information device based on the received first identifier, retrieves the requested at least one address stored in the at least one second positional information device, and transmits the retrieved at least one address to the first positional information device.

On November 25, Geotab, joined by GoFleet, Limo Anywhere, and Life360, filed the present motion to dismiss Rothschild's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) on grounds that the '503 patent claims are not patentable subject matter under 35 U.S.C. § 101. Doc. No. 32. Skypatrol subsequently joined the motion. Doc. No. 64.

3

**LEGAL STANDARD**

I.  **Motion to Dismiss**

A complaint challenged by a Rule 12(b)(6) motion to dismiss must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face,'" to show the plaintiff is plausibly entitled to relief. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

When patent claims on their face are plainly directed to an abstract idea, it is proper to determine patent validity under § 101 at the pleading stage, and such conduct has been repeatedly sanctioned by the Federal Circuit. *See, e.g.*, *Internet Patents Corp. v. Active Network, Inc. et al*, 790 F.3d 1343, 1343 (Fed. Cir. 2015); *OIP Techs. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014). However, in some circumstances, the legal analysis required for determining patent validity under § 101 "may contain underlying factual issues," that would render such a ruling premature. *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013).

II.  **Patent-Eligible Subject Matter**

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . subject to the conditions

and requirements of this title." 35 U.S.C. § 101. The Supreme Court has long recognized three specific exceptions to § 101's broad patentability principles: laws of nature, physical phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1303 (2012); *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013).

The Supreme Court has set forth a two part test for patent-eligibility. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). First, the court must determine "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 2355. If so, the court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1298, 1297). The Supreme Court has described the second step as a search for an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1298).

**DISCUSSION**

**I.    Patent-Eligibility at the Pleading Stage**

As an initial matter, the parties dispute whether ruling on patent validity under § 101 should occur at the pleading stage. Rothschild argues ruling on patent-eligibility is premature because there are genuine issues of material fact and claim construction is necessary. Resp. at 1–2, 14–15. Defendants respond that determining validity under § 101 on the pleadings is appropriate in this case because the patent is invalid on its face, and factual findings and claim construction are not necessary. Mot. at 4; Reply at 8–10.

First, Rothschild argues the question of patent-eligibility requires factual findings about whether the claimed invention is "well known," "routine," or "conventional," and whether a "positional information device" is a generic computer component. Resp. at 14–15. Rothschild further contends that determining validity under § 101 requires factual assumptions regarding the "capabilities of claimed devices (such as a 'positional information device')." *Id.* at 7. Rothschild submits two declarations of Dr. Fang Qui and asks the court to treat Defendants' 12(b)(6) motion as a motion for summary judgment. *Id.* at 7; Resp. Ex. 1; Sur-Reply Ex. A.

While assessing patent-eligibility under § 101 may involve underlying factual findings, courts may also draw on their judicial experience and common sense at the motion to dismiss stage to assess whether an invention or structural claim elements are conventional, routine, or well-known. *See, e.g.*, *OIP Techs.*, 788 F.3d at 1364 (determining at the pleadings stage that the claim limitations are "well-understood, routine conventional data-gathering activities"); *Content Extraction*, 776 F.3d at 1347 (determining at the pleadings stage that "[t]he concept of data collection, recognition, and storage is undisputedly well-known"); *Ultramercial*, 772 F.3d at 715–16 (determining at the pleadings stage that the claimed invention "implement[s] [an] abstract idea with routine, conventional activity"). When the court can plainly discern that the claims are directed to an abstract idea performed on a generic device, it need not look beyond the pleadings or develop an evidentiary record regarding the capabilities of those devices generally.

Here, the Court is able to determine the patentability of the claimed invention based on the patent itself and applicable law, without building a factual record. As explained below, the '503 patent is plainly directed to an abstract idea performed on components with well-known, conventional, and routine functionality. Because the Court need not look beyond the pleadings in assessing patent-eligibility in this particular case, it does not consider the Qui Declarations

submitted by Rothschild (Resp. Ex. 1; Sur-Reply Ex. A) for purposes of this motion. *See Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 415 (5th Cir. 1980) ("[T]he court has complete discretion to determine whether or not to accept any material beyond the pleadings.") (quoting 5 Wright & Miller, Federal Practice & Procedure § 1366, at 675).

Second, Rothschild argues ruling on § 101 is premature because claim construction is required. Rothschild re-asserts the same argument as above, arguing claim construction is necessary to determine whether a "positional information device" is a "conventional device." Resp. at 2, 15. Rothschild further contends "[u]nder the proper claim construction, a GPS device must have, among other things, a location information module to determine its location and a communication module for receiving information from the server." *Id.* at 3.

As this Court has echoed, "claim construction is not an inviolable prerequisite to a validity determination under § 101." *See Landmark Tech., LLC v. Assurant, Inc.*, No. 6:15-cv-76, 2015 WL 4388311, at *3 (E.D. Tex. July 14, 2015) (quoting *Bancorp Servs. LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012)). This is particularly true when, as here, the parties fail to specifically identify a claim construction dispute, or any claim term that, when construed properly, would impact the analysis. While it is the movant's burden to establish invalidity, to the extent a patentee contends a full claim construction proceeding is necessary prior to determining validity, it is the burden of the patentee to come forward and specifically identify the claim terms and proposed constructions that would affect the § 101 inquiry. Simply contending that "there is a genuine issue as to whether the claimed positional information device is a generic computer, as suggested by Defendant, or a specific purpose device, as Plaintiff contends" does little to inform the court why claim construction is required in this instance. *See* Resp. at 15.

Furthermore, adopting Rothschild's proposed construction would not impact the § 101 analysis. Claim 8 expressly requires precisely the claim limitations Rothschild proposes: the "positional information device" includes "a locational information module for determining location information" and "a communication module for receiving the address of the at least one location from the server." *See* '503 patent 14:23–28. As explained below, these structural limitations do not provide an inventive concept sufficient to transform the claim into patent-eligible subject matter. Furthermore, Defendants do not appear to dispute that the positional information device includes these two modules.

The parties have not sufficiently identified any claim dispute or factual issue. Accordingly, there is no reason to delay a § 101 ruling and require the parties to expend additional resources that ultimately will not impact or aid the patent-eligibility determination. To avoid unnecessary delay in adjudicating the § 101 issue and for purposes of the present motion, the court will construe claims in a manner most favorable to Rothschild. *See Content Extraction*, 776 F.3d at 1349.

## II. Patent-Eligibility of Claim 1

Defendants argue independent method claim 1 is invalid under § 101 because the claims are directed to the abstract idea of retrieving an address from another location, and contain no inventive step that transforms it into patent-eligible subject matter. Mot. at 5–10. Rothschild responds claim 1 is directed to patentable subject matter under both *Alice* and the machine-or-transformation test. Resp. at 8–14.

### (A). Abstract Idea

In determining patent-eligibility under § 101, the court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Defendants' contend the '503

8

patent is directed to the abstract concept of "retrieving an address from another location." Mot. at 5. The method recited in claim 1 broadly covers four steps: "(1) receiving a request for an address stored in a device; (2) determining an identifier (e.g., a mobile phone number) for the device in which the address is stored based upon an identifier of the first device; (3) retrieving the requested address; and (4) transmitting the address to the requestor." *Id.* at 6. Rothschild responds that claim 1 is directed to a specific purpose: "to retrieve an address that is electronically stored in a second GPS device, often in incompatible format, and to have the address entered into the user's GPS device without having to manually enter it." Resp. at 9. Rothschild cites to the "server" and "positional information device" limitations to support its validity argument. *Id.*

The Federal Circuit has identified method claims that involve collecting, organizing, recognizing, and/or transmitting information as abstract ideas. *Content Extraction*, 776 F.3d at 1347 ("data collection, recognition, and storage"); *Cyberfone Sys., LLC*, 558 Fed. App'x 988, 992 (Fed. Cir. 2014) ("using categories to organize, store, and transmit information"). For example, in *Content Extraction*, the Federal Circuit determined a method claim directed to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in memory" was not patentable because it was directed to a fundamental concept humans have long performed—data recognition and storage. *Content Extraction*, 776 F.3d at 1347. The claimed method's use of scanning and computer processing technology did not render its abstract concept patent-eligible. *Id.*

In contrast, in *DDR*, the Federal Circuit found the asserted claims patent-eligible where they claimed a "solution . . . necessarily rooted in computer technology to overcome a problem specifically arising in the realm of computer networks"—retaining website visitors on a website.

9

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Specifically, the asserted patent addressed a problem where website visitors would otherwise normally be rerouted from the host website by clicking an advertisement and activating a hyperlink. *Id.* The Federal Circuit drew a careful distinction between the asserted claims in *DDR* and claims that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *Id.*

Claim 1 is directed to a well-understood, fundamental concept of retrieving and sending data along with the requirement that it be performed between two "positional information devices." Rothschild does not contest that the '503 patent is directed to the concept of address retrieval; Rothschild's characterization of the claimed invention simply describes address retrieval performed on a specific device—a GPS. *See* Resp. at 9 ("to retrieve an address that is electronically stored in a second GPS device, often in incompatible format, and to have the address entered into the user's GPS device without having to manually enter it").

Like the asserted claim in *Content Extraction*, claim 1 of the '503 patent, directed to address retrieval, involves a fundamental concept humans have long performed. As Defendants recognize, humans have long been able to retrieve an address from another location—by calling an operator or an assistant to ask for the address, for example. *See* Mot. at 3, 6–7. Claim 1 recites precisely what *DDR* cautioned against: a broad and generic practice known from the pre-GPS world along with the requirement to perform it on a GPS device.

Rothschild responds claim 1 is not directed to an abstract-idea for two reasons, both of which relate back to its implementation on a "positional information device." First, Rothschild argues characterizing the claimed invention as retrieving an address from someone who knows it improperly removes the invention from its intended field of use—GPS devices. Resp. at 8–9.

However, the Federal Circuit has routinely held "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment." *Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *see also Bilski*, 561 U.S. at 612 ("[L]imiting an abstract idea to one field of use . . . d[oes] not make the concept patentable.").

Second, Rothschild contends the purpose of the invention is not abstract because it is directed to solve "a specific problem which exists solely in the realm of electronic GPS devices." Resp. at 10–11; Sur-Reply at 4. Specifically, the claimed invention addresses three problems enumerated in the specification. Resp. at 10–11 (citing '503 patent 1:52–2:20). First, because "different devices recognize addresses differently depending on the preprogrammed information," a user may not know how to program a second device and may "spend 15 to 20 minutes attempting to program in a single address"—a "laborious and timely procedure." '503 patent at 1:50–2:3. Second, a user with multiple devices may need to enter an address into multiple vehicles, and doing so one vehicle at a time can be "very difficult" and "an unnecessary waste of time." *Id.* at 2:4–10. Third, a user may need to enter an address while driving, creating a need "for a user to quickly program the GPS device." *Id.* at 2:11–20. Rothschild argues that, like asserted claims in *DDR*, claim 1 is necessarily rooted in these GPS-specific problems. Sur-Reply at 6.

However, unlike the claimed solution in *DDR*, all of the solutions here simply relate to ease, accuracy, and efficiency benefits achieved when any fundamental or well-known concept is implemented on a computer device. Each benefit is a natural result of a computerized device retrieving an address rather than a human, and is accordingly insufficient to confer patentability. *See Intellectual Ventures*, 792 F.3d at 1367 ("claiming the improved speed or efficiency inherent

11

with applying the abstract idea on a computer" does not render the claims patent-eligible); *OIP Techs.*, 788 F.3d at 1363 ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent-eligible). Therefore, claim 1 is directed to an abstract idea.

    **(B).    Inventive Concept**

Next, the court considers the elements of the claim both individually and in an ordered combination to determine if they "transform the nature of the claim" into patent-eligible subject matter. *Alice*, 134 S. Ct. at 2355. Reciting generic computer elements does not make an otherwise ineligible patent claim patentable. *Id.* at 2358. For the role of a computer to provide a meaningful limitation, it must involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry." *Id.* at 2359.

Defendants argue claim 1 does not recite any meaningful limitations that render it patent-eligible because the claimed steps represent only generic computer functions, characterized as "standard" and "known" in the specification itself. Mot. at 7–9 (analyzing each step of the claimed method). Rothschild responds "positional information device" and "address" are claim elements that limit the claims to a "specific type of device" and a "specific type of data," thereby rendering the claims patent-eligible. Resp. at 14. Rothschild contends the positional information device and server are not generic computer elements because they require "specialized hardware and programming instructions." *Id.* at 9–10; Sur-Reply at 5–6. Rothschild further argues the "claimed combination of a First GPS device . . . with a Second GPS device . . . communicating over a server . . . to transmit an address not stored in the GPS device" is inventive. Resp. at 13.

Even accepting the structures and functions identified by Rothschild as those most favorable to Rothschild, none, taken individually or in combination, transform claim 1 into

patent-eligible subject matter. A GPS device is a well-known generic computer element insufficient to make otherwise patent-ineligible subject matter patentable. *See* '503 patent 1:19–22 (GPS devices "are everywhere"); *Content Extraction*, 886 F.3d at 1348 ("[t]here is no 'inventive concept' in . . . use of a generic scanner and computer"). Moreover, claim 1 does not direct the positional information device to perform anything more than generic computer tasks: "receiving" a request, "determining" an identifier, "retrieving" an address, and "transmitting" the address. Therefore, the steps of claim 1 do nothing more than "spell out what it means to 'apply'" conventional activity on a GPS device. *See Intellectual Ventures*, 792 F.3d at 1370 (quoting *Alice*, 134 S. Ct. at 2359).

That a GPS device may be a "special purpose computer" requiring "special programming instructions" does not change the result when the method recited requires only fundamental steps of requesting, retrieving, and transmitting information. To accept Rothschild's argument would allow for the most basic concept to become patent-eligible subject matter simply because the patent instructs its application on a sophisticated computer. Additionally, that the "*type* of data" requested, retrieved, and transmitted is "an address *stored in* a second positional information device" is not transformative, as Rothschild contends. *See* Resp. at 14 (emphasis in original).

Nor do the claim limitations, viewed in combination, convey an inventive concept that renders the claim patentable. Rothschild argues the "claimed combination" of one GPS device communicating with a second GPS device through a server is an unconventional combination. Resp. at 13; Sur-Reply at 5. However, as the Federal Circuit persistently holds, two computers communicating over a network is not inventive. *See OIP Techs.*, 788 F.3d at 1363 (reciting "sending a first set of electronic messages over a network" is a routine conventional computer function); *buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over

13

a network—with no further specification—is not even arguably inventive."). This is particularly true where, as here, the specification calls for communication to occur using "known" and "standard" networks and protocols. *See* '503 patent 8:36–64, 11:48–52.

Finally, Rothschild argues tying the invention to the GPS devices renders it patent-eligible because it would pass the machine-or-transformation test. Resp. at 8. The Federal Circuit has cautioned "satisfying the machine-or-transformation test, by itself, is not sufficient to render a claim patent-eligible, as not all transformations or machine implementations infuse an otherwise ineligible claim with an 'inventive concept.'" *DDR*, 773 F.3d at 1256. Even so, the functionality claimed here—receiving a request, retrieving an address, and transmitting the address—by no means "transform[s] a general purpose" GPS device "into a specific machine." *See Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015). Consequently, claim 1 does not recite any limitations, identified by Rothschild or otherwise, that transform the claim to cover patent-eligible subject matter.

Claim 1 does not contain any transformative elements, either alone or in combination, that transform its abstract idea into patentable subject matter. Accordingly, claim 1 of the '503 patent is invalid for failure to recite patent-eligible subject matter under § 101.

### III. Patent-Eligibility of Claim 8

Claim 8 is an independent system claim closely related to claim 1. Similar to claim 1, claim 8 is directed to the abstract idea of retrieving an address from another device, and the above analysis regarding the first step of *Alice* applies. As a system claim, claim 8 additionally recites the various components needed to carry out the steps of address retrieval—specifically, a "server," a "positional information device," and a "communication network." *See* '503 patent 14:19–36. The positional information device includes four functional modules, a "locational

14

information module," a "communication module," a "processing module," and a "display module." *Id.* at 14:23–33.

All of the additional components recited in claim 8 are generic computer components configured to effectuate the same well-known functionality of retrieving data and communicating over a network. Adding these generic structures to implement the steps of the claimed method does not transform the system claim into patent-eligible subject matter. *See Alice*, 134 S. Ct. at 2360 (invalidating a system claim that merely included "a handful of generic computer components configured to implement the same [abstract] idea" claimed in the method claim). Therefore, claim 8 does not contain any transformative limitations. Accordingly, claim 8 of the '503 patent is invalid for failure to recite patent-eligible subject matter under § 101.

## IV. Patent-Eligibility of Dependent Claims

The remaining dependent claims of the '503 patent similarly fail to recite patent-eligible subject matter because they add no meaningful limitations to either claim 1 or claim 8.

The majority of the dependent claims merely limit the format of certain information, which is insufficient to render the invention patent-eligible. Claims 2, 6, 9, and 13 require the first or second identifier to be a mobile phone number or an IP address. '503 patent 14:3–4, 14:11–13; 14:48–49, 14:56–57. Claims 3 and 10 require the address be "transmitted in longitude or latitude coordinates." '503 patent 14:5–6, 14:50–51. Additionally, claims 5 and 15 require the request from the first positional information device be "received by voice communication." *Id.* 14:9–10, 14:61–63. Claim elements specifying the format of data sent, received, or determined, are not meaningful limitations conferring patent-eligibility. *See Landmark Tech.*, 2015 WL 4388311, at *8 (limiting the format of information to "audio and

15

video forms," to "words, phrases, numbers, and letters," and to "maps, charts, pictures, and moving images," in dependent claims is not transformative).

Claim 15 also includes the additional limitation that the "server is operated by a live operator." '503 patent 14:61–63. Viewing the claim in the light most favorable to Rothschild,[3] limiting the system to one with a "live operator" serves only to confine the invention to "a particular technological environment," which is insufficient to transform the patent-ineligible invention into a patentable one. *Intellectual Ventures*, 792 F.3d at 1367.

Claims 4 and 11 require that the address "is graphically displayed on a map." '503 patent 14:7–8, 14:51–52. Limiting how information is presented to a conventional manner does not render the invention patent-eligible. *See Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005, 1008–09 (Fed. Cir. 2014) (requiring a "video screen" display does not transform the claimed subject matter into a patent-eligible application).

Finally, claims 7 and 14 add a limitation to the retrieving step to require retrieving the address "from a database residing on [a/the] server, the database being associated to the at least one second positional information device." '503 patent 14:14–17, 14:58–61. Confining data storage and retrieval to a database is merely a generic data collection limitation and is not transformative. *See Telinit Techs., LLC v. Alteva, Inc.*, No. 2:14-cv-369, 2015 WL 5578604, at *18 (E.D. Tex. September 21, 2015) (adding "accessing a stored database in accordance with the data access request" in a dependent claim does not confer patent-eligibility). Therefore, the dependent claims of the '503 patent fail to recite patent-eligible subject matter.

---

[3] Naturally occurring organisms are not patentable. *See In re Roslin Institute*, 750 F.3d 1333, 1336 (Fed. Cir. 2014).

## CONCLUSION

For the reasons discussed, the claims of the '503 patent are directed to patent-ineligible subject matter and therefore invalid under 35 U.S.C. § 101. Accordingly, the Court recommends that Defendants' Motion to Dismiss (Doc. Nos. 32 and 64) be **GRANTED**.

Within fourteen (14) days of receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations, and, except on grounds of plain error, from appellate review of unobjected to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 4th day of January, 2016.**

*[Signature]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE