UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **ROTHSCHILD LOCATION TECHNOLOGIES LLC,** § § § § *Plaintiff*, § § v. § § **VANTAGE POINT MAPPING, INC.** § § *Defendant.* § § | | **CASE NO. 6:15-cv-682 LEAD CASE** <br><br> **CASE NO. 6:15-cv-684-RWS-JDL** <br><br> **MEMBER CASE** |
| **ROTHSCHILD LOCATION TECHNOLOGIES LLC,** § § § *Plaintiff*, § § v. § § **VERACITY WIRELESS, INC.** § § *Defendant.* § § | | **CASE NO. 6:15-cv-799-RWS-JDL** <br><br> **MEMBER CASE** |
| **ROTHSCHILD LOCATION TECHNOLOGIES LLC,** § § § *Plaintiff*, § § v. § § **SKYPATROL, LLC** § § *Defendant.* § § | | **CASE NO. 6:15-cv-828-RWS-JDL** <br><br> **MEMBER CASE** |

| | | |
|---|---|---|
| **ROTHSCHILD LOCATION TECHNOLOGIES LLC,** § § § § *Plaintiff*, § § **v.** § § **MARATHON DATA OPERATING CO., LLC** § § § *Defendant.* § § § | | **CASE NO. 6:15-cv-829-RWS-JDL** **MEMBER CASE** |
| **ROTHSCHILD LOCATION TECHNOLOGIES LLC,** § § § § *Plaintiff*, § § **v.** § § **LIMO ANYWHERE, LLC** § § § *Defendant.* § § | | **CASE NO. 6:15-cv-830-RWS-JDL** **MEMBER CASE** |
| **ROTHSCHILD LOCATION TECHNOLOGIES LLC,** § § § § *Plaintiff*, § § **v.** § § **LIFE360 INC.** § § § *Defendant.* § § | | **CASE NO. 6:15-cv-867-RWS-JDL** **MEMBER CASE** |

## **MEMORANDUM OPINION AND ORDER**

On January 4, 2016, Magistrate Judge John D. Love issued a Report and Recommendation (Doc. No. 93) recommending that Defendants' Motions to Dismiss for Failure

to State a Claim (Doc. No. 32, 64) be granted because the claims under U.S. Patent No. 8,606,503 ("the '503 Patent") are not patentable subject matter in accordance with 35 U.S.C. § 101. On May 20, 2016, the undersigned adopted the Magistrate Judge's Report (Doc. No. 118), and entered final judgment in favor of Defendants Life360 Inc., Limo Anywhere, LLC, Marathon Data Operating Co., Vantage Point Mapping, Inc., Veracity Wireless, Inc., and Skypatrol, LLC[1] (Doc. No. 120).

Before the Court now is Plaintiff Rothschild Location Technologies, LLC's ("Rothschild") Motion for Reconsideration Pursuant to Fed. R. Civ. P. 59(e) and 60(b) (Doc. No. 122). Plaintiff seeks reconsideration of the Court's ruling in light of the Federal Circuit's decision in *Enfish*, *LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. May 12, 2016). Also before the Court is Rothschild's Motion for Leave to Supplement Rule 60 Motion for Reconsideration (Doc. No. 126) in light of *Bascom Global Internet Services, Inc. v. AT&T Mobility, LLC, et al*, 827 F.3d 1341 (Fed. Cir. June 27, 2016). Defendants Geotab, Inc., GoFleet Corporation, Iler Group, Inc., Limo Anywhere, LLC, Marathon Data Operating Co., Vantage Point Mapping, Inc., and Veracity Wireless, Inc. (collectively, "Defendants") filed responses (Doc. Nos. 123, 127).[2]

For the reasons discussed below, the Court **DENIES** the present Motions (Doc. Nos. 122 and 126) and the Court's final judgment entered on May 20, 2016 (Doc. No. 120) stands.

---

[1] Plaintiff Rothschild and Defendants Geotab, Inc., GoFleet Corporation, Iler Group, Inc., and Quartix Inc. consented (Doc. Nos. 85, 86) to United States Magistrate Judge John D. Love conducting all proceedings in this action and ordering entry of a final judgment (Doc. No. 119). All six remaining Defendants did not consent.

[2] Defendants Marathon Data Operating Co, Vantage Point Mapping, Inc., and Veracity Wireless, Inc. did not join in the underlying Motion to Dismiss, but have joined in the responses to Plaintiff's Motion for Reconsideration and Motion for Leave. Defendant Skypatrol, which joined the underlying Motion to Dismiss, has not joined in Defendants' responses. Defendant Quartix neither joined the underlying Motion to Dismiss nor joined in Defendants' responses to the present Motions.

## I. LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Depending on when it is filed, a motion seeking relief from judgment may be construed under either Rule 59(e) as a motion to alter or amend a judgment, or under Rule 60(b) as a motion for relief from a final judgment. *Id.*; *Williams v. Thaler*, 602 F.3d 291, 303 (5th Cir. 2010) ("When a litigant files a motion seeking a change in judgment, courts typically determine the appropriate motion based on whether the litigant filed the motion within Rule 59(e)'s time limit."). If a motion for reconsideration is filed within 28 days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion. *See Hamilton Rothschilds v. Williams Rothschilds*, 147 F.3d 367, 371 n. 19 (5th Cir. 1998). Because Rothschild's motion was filed within 28 days of the final judgment, the Court construes Rothschild's motion as a motion to amend the judgment under Rule 59(e). *See Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177 (5th Cir. 2012) (where the court considered plaintiff's Rule 60(b) motion as a motion to amend judgment under Rule 59(e) because it was filed within the applicable 28 day time frame).

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In Re Transtexas Gas. Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, at 479 (citing *Clancy v. Employers Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)). In the Fifth Circuit, Rule 59(e) standards "favor the denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993) (citations omitted). Under Rule 59(e), amending a judgment

is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact. *Demahy*, at 182 (citing *Schiller v. Physicians Res. Grp. Inc.,* 342 F.3d 563, 567 (5th Cir.2003)). A motion under Rule 59 cannot be used to raise arguments or claims "that could, and should, have been made before the judgment issued." *Id*. (citing *Marseilles Homeowners Condo. Ass'n v. Fidelity Nat. Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008)).

## II. ANALYSIS

Rothschild contends that reconsideration of the Court's prior ruling is appropriate on two of the three grounds under Rule 59(e). *See Demahy*, at 182. First, Plaintiff avers that the Federal Circuit's recent opinion in *Enfish* is an intervening change in law. Doc. No. 122 at 1. Specifically, Rothschild argues that the Court applied an incorrect level of abstraction to its claims, and did not properly consider whether the focus of the claims is on a specific asserted improvement in computer capabilities. Doc. No. 122 at 4. Second, Rothschild argues that the Court's judgment represents "manifest injustice." Doc. No. 122 at 13. Rothschild does not claim to present newly discovered evidence as a grounds for reconsideration. Defendants maintain that *Enfish* is not an intervening change in law, but that even under *Enfish* the '503 Patent is still inelgible. Doc. No. 123 at 5, 6. For the reasons enumerated below, the Court denies Rothschild's motion.

### A. *Enfish* **is not an intervening change in the law.**

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has long recognized three

5

specific exceptions to § 101's broad patentability principles: laws of nature, physical phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1303 (2012); *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013). The test for patent-eligibility is set forth in the two-step approach under *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). First, the court must determine "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 2355. If so, the court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1298, 1297). The Supreme Court has described the second step as a search for an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1298).

In *Enfish*, the Federal Circuit overturned the district court's decision that Enfish's patent was ineligible under § 101, and found that Enfish's "self-referential" database, a logical model database that can store and define the relevant information within a single table, was eligible for patenting. Recognizing that "some improvements in computer-related technology when appropriately claimed are undoubtedly not abstract, such as chip architecture, an LED display, and the like," the court found it relevant to ask at the first step of the *Alice* "whether the focus of the claims is on the specific asserted improvement in computer capabilities (i.e., the self-referential table for a computer database) or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Enfish*, at 1335-36. In doing so, the court confirmed that the "directed to" inquiry "cannot simply ask whether the claims *involve* a

6

patent-eligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon." *Id*. "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Id*. (citing *Internet Patent Corp. v. Active Network Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

Rothschild first argues that *Enfish* explicitly rejected the common reading of Alice that all improvements in computer-related technology are inherently abstract, and that instead, the proper inquiry at the first step is to ask "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." Doc. No. 122 at 5 (quoting *Enfish*, 822 F.3d 1327, 1335). Plaintiff's argument is premised upon an incorrect understanding of the Federal Circuit's prior holdings. The Federal Circuit in *Enfish* noted that in virtually all of the computer-related § 101 decisions it has issued in light of *Alice* and *Bilski*, the focus of those claims was on specific processes that qualified as abstract ideas for which computers were invoked merely as tools. *Enfish*, at 1336. The Federal Circuit distinguished those ineligible claims from the *Enfish* claims, which focused on an improvement to computer functionality itself, not on an economic or other task for which a computer is used in its ordinary capacity. *Id*. *Alice* already stood for the proposition that inventions which "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field are not directed to abstract ideas." *Alice*, at 2359. In *DDR Holdings, LLC v. Hotels.com, L.P.*, a case following *Alice* but pre-dating *Enfish*, the Federal Circuit found under the *Mayo/Alice* analysis that the asserted claims were patent-eligible because they claimed a "solution . . . necessarily

7

rooted in computer technology to overcome a problem specifically arising in the realm of computer networks." 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Moreover, *Enfish* does not stand for the proposition that improvement to computer functionality is always sufficient to satisfy step one of *Alice*. *See Certusview Technologies, LLC v. S&N Locating Services LLC*, No. 2:13CV346, 2016 WL 4251579, at *1, 8 n. 6 (E.D. VA. Sept. 2, 2016). *Enfish* recognized that in some cases involving computer-related claims, "there may be close calls about how to characterize what the claims are directed to," in which case, "an analysis of whether there are arguably concrete improvements in the recited computer technology could take place under step two." *Enfish*, at 1339. "*Enfish* is thus best understood as a case which cautions against oversimplification during step one of *Mayo/Alice*, rather than a case which exempts from § 101 scrutiny all patents which purport to improve the functioning of a computer." *Visual Memory LLC v. NVIDIA Corp.*, No. 1:15-cv-789, 2016 WL 3041847, at *4 (D. Del. May 27, 2016); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) (acknowledging *Bilski's* "rejection of 'categorical rules' to decide subject matter eligibility") (quoting *Bilski*, 561 U.S. at 610). The Court therefore disagrees with Plaintiff that *Enfish* represents a change to step one of the *Alice* analysis.

Second, Rothschild avers that *Enfish* represents a change in law regarding how a court determines what a claim is "directed to," and that a court cannot simply ask whether the claims involve a patent-ineligible concept. Doc. No. 122 at 5. *Enfish* cautioned against describing claims at a high level of abstraction and untethered from the language of the claims. *Enfish*, at 1337. But in doing so, *Enfish* merely affirmed the existing law that claims are to be considered as a whole in order to evaluate what they are directed toward. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (holding that "[u]nder step one of

*Mayo/Alice*, the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter"); *Genetic Techs. Ltd. V. Merial L.L.C.*, 818 F.3d 1369, 1375 (Fed. Cir. 2016) (in which the courts considered "the focus of the claimed advance over the prior art" at step one.). That a court should not characterize an invention at too high of a level of abstraction, and should consider as a whole what a claim is directed toward, has previously been articulated in prior § 101 decisions, and does not present a change in the law.

According to Rothschild, *Enfish* "drastically changes the analysis which a court must undertake at step one of the *Alice* test." Doc. No. 124 at 2. However, at the most, *Enfish* and subsequent cases suggest "that there is considerable overlap between step one and step two," but that "whether the more detailed analysis is undertaken at step one or at step two, the analysis presumably would be based on a generally-accepted and understood *definition* of, or test for, what an 'abstract idea' encompasses." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 2015-1180, 2016 WL 6440387, at *1, 8-9 (Fed. Cir. 2016); *see also Elec. Power Grp., LLC v. Alston S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("the two stages involve overlapping scrutiny of the content of the claims…[and] there can be close questions about when the inquiry should proceed from the first stage to the second"); *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) ("[T]he claims and their specific limitations do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea. We therefore defer our consideration of the specific claim limitations' narrowing effect for step two."). The United States Patent and Trademark Office has also described *Enfish* as "provid[ing] additional information and clarification on the inquiry for identifying abstract ideas," but that *Enfish* "does not change the subject matter eligibility framework." Doc. No. 122, Ex. B at 1.

*Enfish* and subsequent cases confirm the overlapping and fluid nature between the two stages of *Alice*. *Enfish* does not overturn or substantially change the *Alice* test; rather the decision largely reaffirms the existing case law in clarifying the application of *Alice* to claims that as a whole are directed to a technological improvement. *See Certusview*, at *8 ("the Court finds that the *Enfish* decision is not a 'contrary decision of law'…[i]nstead, the *Enfish* decision merely applies step one of the *Alice* framework to patent claims addressing computer functionality and explains the difference between patent-*eligible* claims direct to technological improvements of computer functionality and patent-*ineligible* claims direct to 'abstract ideas' which employ computers as only a tool."); *see also A Pty Ltd. v. Facebook, Inc.*, No. 1:15CV156, 2016 WL 4212292, at *1, 4 (W.D. Tex. Aug. 9, 2016) ("*Enfish* did not depart from this [*Alice*] framework."). Accordingly, the Court finds that Rothschild has not demonstrated that reconsideration under Rule 59(e) is warranted based on an intervening change in the law, and **DENIES** Rothschild's Motion (Doc. No. 122).

### B. The '503 Patent is still patent-ineligible under *Enfish*.

Even if *Enfish* represented an intervening change in the law, the Court would still reach the same conclusion—that the '503 Patent is ineligible under § 101. In *Enfish*, the claim at issue involved means-plus-function claiming and recited "means for indexing data" that the district court construed as requiring a four-step algorithm. *Enfish*, 822 F.3d 1327, 1336.

> 1. Create, in a computer memory, a logical table that need not be stored contiguously in the computer memory, the logical table being comprised of rows and columns, the rows corresponding to records, the columns corresponding to fields or attributes, the logical table being capable of storing different kinds of records.
> 2. Assign each row and column an object identification number (OID) that, when stored as data, can act as a pointer to the associated row or column and that can be of variable length between databases.
> 3. For each column, store information about that column in one or more rows, rendering the table self-referential, the appending, to the logical table, of new

> columns that are available for immediate use being possible through the creation of new column definition records.
> 4. In one or more cells defined by the intersection of the rows and columns, store and access data, which can include structured data, unstructured data, or a pointer to another row.

*Id*. at 1336-37. *Enfish*'*s* claims are "not simply directed to any form of storing tabular data, but instead are specifically direct to a self-referential table for a computer database . . . reflected in step three of the 'means for configuring' algorithm." *Id*. at 1337. The Federal Circuit found that "[t]he necessity of describing the claims in such a way is underscored by the specification's emphasis that 'the present invention comprises the flexible, self-referential table that stores data." *Id*. The court emphasized that the "self-referential table functions differently than conventional database structures," and found that the claims' improvement in existing technology was "bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and small memory requirements." *Id*. In overturning the district court's finding which "oversimplified the self-referential component of the claims and downplayed the invention's benefits," the Federal Circuit noted that *Enfish* was not a case where the court was faced with a situation where "general-purpose computer components are added post-hoc to a fundamental economic practice or mathematical equation." *Id*. at 1338, 1339.

Rothschild first argues that the Court applied an improper level of abstraction to the claims, and that the Court divorced the claimed solution from the claim language, specification, and claimed advance over the prior art. The '503 Patent contains two independent claims, method claim 1 and system claim 8, which recite as follows:

> 1. A method for entering location information into a positional information device, the method comprising:
>     receiving, by a server, a request from a first positional information
>         device for at least one address stored in at least one second

11

positional information device, the request including a first identifier of the first positional information device;

determining, by the server, a second identifier for identifying the at least one second positional information device based on the received first identifier;

retrieving, by the server, the requested at least one address stored in the identified at least one second positional information device; and

transmitting, by the server, the retrieved at least one address to the first positional information device.

8. A system for entering location information into a positional information device, the system comprising:

a server configured to receive a request for at least one location, determine an address of the at least one requested location and to transmit the determined coordinates to a first positional information device;

the first positional information device including

a locational information module for determining location information of the first positional information device;

a communication module for receiving the address of the at least one location from the server;

a processing module configured to receive the address from the communication module and determine route guidance based on the location of the first positional information device and the received address; and

a display module for displaying the route guidance; and

a communications network for coupling the first positional information device to the server,

wherein the server receives a request from a first positional information device for the at least one address stored in at least one second positional information device, the request including a first identifier of the first positional information device, determines a second identifier for identifying at least one second positional information device based on the received first identifier, retrieves the requested at least one address stored in the at least one second positional information device, and transmits the retrieved at least one address to the first positional information device.

The specification describes the present disclosure as relating to "devices, systems, and methods for remotely entering, storing, and sharing addresses for a positional information device, e.g., a global positioning system (GPS) device." '503 Patent 1:16-20; 2:41-43. The specification further elaborates that "[t]he present disclosure allows a user to easily and safely

enter an address into a GPS device by giving that address to a remote communications link and to have that link automatically program the users' GPS device for usage." '503 Patent 3:67-4:3. The device, system, and method then "allows the user to use this stored address(es) on multiple GPS devices without having to manually enter the address(es)." '503 Patent 4:3-6.

As the Court found in its Report and Recommendation, Rothschild's characterization of the claimed invention simply describes address retrieval performed on a specific device – a GPS. Doc. No. 93 at 10. In its Motion for Reconsideration, Rothschild acknowledges that "[t]he purpose of the invention is for a first GPS device to retrieve an address" remotely stored in a second GPS, and that its claims are directed to an improvement in computer capability, specifically the functioning of GPS devices "remotely entering, storing, and sharing location addresses." *Id*. at 8-10. Rothschild qualifies this admission in its subsequent briefing by stating that the claims are not directed merely to retrieving an address, "but rather are directed to an unconventional hardware and software setup that solves a problem with traditional GPS systems." Doc. No. 124 at 3.

The instant case is more akin to *TLI* than *Enfish*. In *TLI*, the court examined a representative claim that recited:

> 17. A method for recording and administering digital images, comprising the steps of:
> recording images using a digital pick up unit in a telephone unit,
> storing the images recorded by the digital pick up unit in a digital form as digital images,
> transmitting data including at least the digital images and classification information to a server, wherein said classification information is prescribable by a user of the telephone unit for allocation to the digital images,
> receiving the data by the server,
> extracting classification information which characterizes the digital images from the received data, and
> storing the digital images in the server, said step of storing taking into consideration the classification information.

823 F.3d 607, 610. The *Enfish* court contrasted claims "directed to an improvement in the functioning of a computer" with claims "simply adding conventional computer components to well-known business practices," or claims reciting "use of an abstract mathematical formula on any general purpose computer." *Id*. at 612 (citing *Enfish*, at 1338). *Enfish* also contrasted improvement in computer functionality claims with "a purely conventional computer implementation of a mathematical formula," or 'generalized steps to be performed on a computer using conventional computer activity.'" *Id*. In *TLI*, the Federal Circuit found under step one of *Alice* that the plaintiff's claims fit in the latter category, and were not directed to a specific improvement in computer functionality, but instead were "directed to the use of conventional or generic technology in a nascent, but well-known environment, without any claim that the invention reflect[ed] an inventive solution to any problem presented by combining the two." *Id*. at 612. The claims were directed to the abstract idea of "classifying and storing digital images in an organized manner," without describing a new telephone, a new server, or a new physical combination of the two, and without providing any technical details for the tangible components. *Id*. at 612-13.

Similarly, beyond its repeated assertions that its claims are directed to an unconventional combination of hardware and software, Rothschild does not articulate what specifically makes its claims patent-eligible. Unlike in *Enfish*, the '503 Patent does not disclose any mathematical algorithm or means of applying an algorithm that actually represents an application of Rothschild's present disclosure. Nor does the patent describe a new server or any new physical component. Rothschild concedes that its claims make use of conventional GPS devices, but cites to *Bascom* to argue that its unconventional and non-generic arrangement of known, conventional pieces transcends abstractness. Doc. No. 124 at 4.

The claimed and described inventive concept in *Bascom* was the "installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." 827 F.3d at 1350. The Federal Circuit in *Bascom* found that the claims were directed to an abstract idea under step one, that under step two the limitations of the claims, taken individually, recited generic computer network, and that the internet components were not inventive by themselves. *Id*., at 1349-52. But the Federal Circuit found that because the claims' design permitted the filtering tool to have "both the benefits of a filter on a local computer, and the benefits of a filter on the server," the claims did not preempt all ways of filtering content on the internet. *Id*. Instead, "the patent claimed and explained how a particular arrangement of elements was 'a technical improvement over prior art ways of filtering such content.'" *Amdocs*, 2016 WL 6440387, at 19 (citing *Bascom*, at 1350).

The case at hand is distinguishable from *Bascom*. As explained in the Magistrate Judge's Report and Recommendation, the '503 claim limitations, even when viewed in combination, do not convey an inventive concept that renders the claim patentable. Doc. No. 93 at 13. The Federal Circuit has held that two computers communicating over a network is not inventive. *See OIP Techs. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("sending a first set of electronic messages over a network" is a routine conventional computer function); *see also* R&R at 12-14, Doc. No. 93. In *Bascom*, the plaintiff articulated how an inventive concept could be found in the ordered combination of claim limitations that transform the abstract idea of filtering content into a particular, practical application of that abstract idea. Here, Rothschild fails to describe what about its particular arrangement of conventional pieces transforms the abstract idea of two servers transmitting information over a network into a specific technological improvement.

Rothschild next argues that the '503 Patent is patent-eligible in light of *Enfish* because its claims "focus on specific improvements to GPS devices." Doc. No. 122 at 8–10. Rothschild's specification addresses three problems: (1) that different devices recognize addresses differently depending on the preprogrammed information that has been stored; (2) many users have multiple vehicles that go to the same address; and, (3) many times a user needs to route to an address or destination while the user is driving. '503 Patent 1:52–54; 2:4–9; 2:11–16. Rothschild's solutions to these problems are not designed to improve computer functionality. In *Enfish*, the court found that the plaintiff's self-referential table was designed to improve the way a computer stores and retrieves data in memory. *Enfish*, at 1339. Contrastingly, in *TLI*, the court rejected the argument that the claims were directed to a solution to a technological problem where the absence of any technical detail made the claimed device "merely a conduit for the abstract idea." *TLI*, at 612–13. Like in *TLI*, the benefits and claimed solution here are not an improvement to computer functionality; they are benefits necessarily derived from applying the abstract concept of "retrieving an address form another location" on a computerized system. In other words, Rothschild improves the retrieval function by having a computer perform the task—it does not improve the way the computer itself functions. As discussed in the Court's previous rulings, the improvements which Rothschild claims "simply relate to ease, accuracy, and efficiency benefits achieved when any fundamental or well-known concept is implemented on a computer device." Doc. No. 93 at 11.

Neither *Enfish*, *Bascom*, nor *TLI*, changes the Court's prior ruling that Rothschild's '503 Patent is directed towards patent-ineligible subject matter. Rothschild's claimed benefits and solutions are not improvements in computer functionality, and the nature of its claims is markedly different from the claim issues in *Enfish* and *Bascom*. Rothschild's claims, when

viewed individually and in combination, are directed to the abstract idea of retrieving an address from another location, and are not patent-eligible under § 101.

### C. No manifest error in law or fact.

Rothschild asserts that the Court's Judgment represents manifest injustice because the '503 Patent should be patentable under *Enfish*, for the reasons discussed above. Doc. No. 122 at 10-11; Doc. No. 124 at 5. The Court construes Rothschild's argument to be that of a "manifest error of law." "A manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (internal quotations omitted). As a threshold matter, the Court has determined that *Enfish* is not an intervening change in the law. But even if the Court were to reconsider the '503 Patent under *Enfish* and *Bascom*, the patent would still be ineligible for the reasons discussed above.

## III. CONCLUSION

For the reasons discussed, *Enfish* is not an intervening change in the law, but even in light of *Enfish* and subsequent cases, the claims of the '503 Patent are still directed to patent-ineligible subject matter, and therefore are precluded by 35 U.S.C. § 101. Accordingly, the Court **DENIES** Rothschild's Motion for Reconsideration (Doc. No. 122) and Motion for Leave to File Supplement Rule 60 Motion for Reconsideration (Doc. No. 126). The Court's Final Judgment issued on May 20, 2016 stands.

**SIGNED this 5th day of December, 2016.**

*[signature: Robert W. Schroeder III]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE